IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>GENERAL MEDICINE, P.C., et. al.,<br><br>          Defendants. | No.  22-cv-651-SMY |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION RE DEPOSITIONS**

The United States of America, by and through the undersigned counsel, respectfully requests the Court deny Defendants' Motion Re Depositions.

### BACKGROUND

This case arises from Defendants' submission of false claims to Medicare during the period of 2016 through 2022 for visits with nursing and assisted living facility residents. The United States alleges Defendants knew the claims were not covered by Medicare or properly coded because, among other reasons, CMS contractors had repeatedly educated Defendants on Medicare coverage rules in audit decisions denying and downcoding Defendants' claims.[1] (Doc. 86 ¶¶ 321-27). The United States further asserts the Medicare Appeals Council ("Council") issued two decisions finding Medicare did not require the visits Defendants mandated their clinicians to perform. (*Id*. ¶¶ 321-46). Defendants argue the government cannot establish Defendants knowingly submitted false claims because Defendants have relied on specific communications

---

[1] Defendants' Motion conflates electronic processing of Medicare claims with the first step in the medical review of a claim. (Doc. 96 ¶ 5).  If a claim is chosen for a medical review by a Medicare contractor, that process involves review of the claim's underlying medical records by a medical professional, not a computer.   *See* https://www.cms.gov/data-research/monitoring-programs/medicare-fee-service-compliance-programs/medical-review-and-education. If the contractor's medical review decision is unfavorable, that decision can be appealed in a request for redetermination by the applicable Medicare contractor, which is Level 1 of the Medicare appeals process. *See* https://www.hhs.gov/about/agencies/omha/the-appeals-process/index.html.

1

with former HHS employees from over twenty years ago, the outcome of a prior qui tam resolved in 2009, a site visit conducted by two attorneys with the HHS Office of General Counsel to the Inspector General in 2011, and various decisions by HHS Administrative Law Judges (ALJs), which is the level of administrative appeal before the Council.[2]

On May 26, 2023, Defendants served the United States with a Rule 30(b)(6) deposition notice containing 35 topics. The 30(b)(6) notice did not contain any topics related to any government "policies," but topic 7 was the "[r]egulations and statutes relied upon by Plaintiff." Topic 17 was the "[d]enial and downcoding of General Medicine's claims by Medicare contractors." Topic 18 was identified as the "[d]enial and downcoding of General Medicine claims by the Medicare Appeals Council."  None of these topics related to appeals decided by ALJs or a backlog of cases at the ALJ level. Defendants have not propounded any written discovery to the United States on the ALJ appeals process, a backlog of ALJ appeals, or "government policies from the viewpoint of OIG."

After conferring with Defendants, the United States outlined the following scope for 30(b)(6) topics 7, 17, and 18 on October 31, 2023 via email to defense counsel:

> Topic 7: The statutes, regulations, and agency guidance that apply to Medicare's coverage of Evaluation and Management (E/M) services provided to nursing facility and assisted living facility patients.
>
> Topic 17: CMS contractors' medical reviews and audits of Defendants' claims to Medicare Part B and the results of those reviews and audits during the time period of January 2014 – March 2022.

---

[2] There are five levels to the Medicare Appeals process: Level 1 – redetermination; Level 2 – Reconsideration; Level 3 – ALJ hearing; Level 4 – Medicare Appeals Council; and Level 5 – Judicial review in U.S. District Court. *See* https://www.hhs.gov/about/agencies/omha/the-appeals-process/index.html.

Topic 18: The general process and procedure for appeals to the Medicare Appeals Council.

The United States designated Dr. Greg McKinney and Dr. Earl Berman, who both serve as Chief Medical Officers for Centers for Medicare and Medicaid Services (CMS) Medicare Administrative Contractors (MACs),[3] to testify on topics 7 and 17. Defendants deposed Dr. McKinney and Dr. Berman on April 11, 2024 and June 5, 2024, respectively. The United States designated three other 30(b)(6) witnesses to testify on topic 17, and Defendants deposed one of those witnesses on May 1, 2024. In March 2024, Defendants deposed former HHS Office of Inspector General (HHS-OIG) Special Agent Kenneth Wells, who served as an investigator on this matter.

The United States designated Administrative Appeals Judge Angela Roach to testify on Topic 18 on April 22, 2024. Judge Roach is currently on detail as an advisor to the Board Chair of the HHS Departmental Appeals Board (DAB), which encompasses the Medicare Appeals Council.[4] Judge Roach was not designated as a 30(b)(6) witness on the ALJ appeals process or the ALJ backlog, as those subjects were not topics in the notice, although she testified that she was generally familiar with both subjects and answered several questions. Immediately after Judge Roach's deposition, Defendants requested to depose Chief ALJ McArthur Allen. The United States objected to the deposition of Judge Allen, as discussed in detail below, and instead offered to designate a 30(b)(6) witness to testify on the general process and procedure for appeals to the ALJ. Defendants did not accept the United States' offer to depose a 30(b)(6) witness on the ALJ process and continue to seek Judge Allen's deposition.

---

[3] MACs administer the Medicare program on behalf of CMS. https://www.cms.gov/medicare/coding-billing/medicare-administrative-contractors-macs/whats-mac. In addition to other tasks, MACs educate providers about Medicare billing requirements. *Id*.

[4] *See* Departmental Appeals Board Organizational Chart, https://www.hhs.gov/about/agencies/orgchart/dab/index.html.

3

Judge Allen serves as the Chief ALJ for the HHS Office Medicare Hearings and Appeals (OMHA).[5] As Chief ALJ, Judge Allen leads the entire OMHA organization, which consists of ten field offices, one satellite office, and a headquarters office.[6] Each office is comprised of ALJs, attorney adjudicators, and legal administrative staff who manage, process, and adjudicate dockets of appeals. Judge Allen has responsibility for the second largest ALJ corps in the United States.[7] OMHA, and Judge Allen, report directly to the Secretary of HHS.[8]

Judge Allen was appointed Chief ALJ in November 2020 and only served in this role for a small portion of the relevant time period in this case.[9] Between October 2018 and November 2020, Judge Allen served as an Associate Chief Judge in the OMHA Atlanta Field Office. Prior to October 2018, Chief Judge Allen was an ALJ for the U.S. Social Security Administration.

On April 26, 2024, Defendants requested to depose Vicki Robinson, Senior Counselor for Policy for HHS-OIG. Ms. Robinson is a senior level attorney and reports directly to the Inspector General ("IG"), as demonstrated in the HHS-OIG Organization Chart[10] below:

---

[5] *See* Executive Leadership Team, https://www.hhs.gov/about/agencies/omha/about/organizational-chart/meet-the-executive-leadership-team/index.html.
[6] About OMHA, https://www.hhs.gov/about/agencies/omha/about/index.html.
[7] *See* Executive Leadership Team, https://www.hhs.gov/about/agencies/omha/about/organizational-chart/meet-the-executive-leadership-team/index.html.
[8] Organizational Chart, https://www.hhs.gov/about/agencies/omha/about/organizational-chart/index.html; HHS Leadership, https://www.hhs.gov/about/leadership/index.html (identifying Judge Allen as HHS Leadership).
[9] *See* https://www.hhs.gov/about/leadership/mcarthur-allen.html.
[10] Organization Chart, https://oig.hhs.gov/about-oig/organization-chart/.



*See also* Declaration of Vicki L. Robinson, attached hereto as Ex. 1 ¶ 2. The IG reports to the HHS Office of the Secretary.[11] As Senior Counselor for Policy, Ms. Robinson's responsibilities include strategic planning for oversight, budget, and OIG priorities. Ex. 1 ¶ 1. She helps set OIG-wide strategic goals, advises the IG on OIG policy issues, and reviews reports and other OIG products. *Id*. She has served in this position since July 29, 2012. *Id*. From September 26, 2010 through July 28, 2012, Ms. Robinson served as an attorney-advisor in the Immediate Office of the Inspector General with responsibility for advising the IG and others in OIG on matters related to health care reform. *Id*. Her responsibilities in these positions did not include work on individual case matters, such as matters under the False Claims Act or Corporate Integrity Agreements between HHS-OIG and private entities like General Medicine, P.C. *Id*. ¶ 3.

From May 4, 2003 through September 25, 2010, Ms. Robinson was the Chief of the Industry Guidance Branch of the Office of Counsel to the IG. *Id*. ¶ 4. Her responsibilities included

---

[11] HHS Organizational Charts Office of Secretary and Divisions, https://www.hhs.gov/about/agencies/orgchart/index.html.

the management of the Industry Guidance Branch and supervision of attorneys in that branch. *Id*. The Industry Guidance Branch drafts and issues advisory opinions in response to formal requests from members of the health care industry or the public on whether an activity (or proposed activity) would constitute grounds for imposition of a sanction under the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)), the Civil Monetary Penalties Law (42 U.S.C. § 1320a-7a), or the program exclusion statute (42 U.S.C. § 1320a-7a), and producing other products related to the Anti-Kickback Statute, such as safe harbor regulations. *Id*. As Chief of the Industry Guidance Branch, she had no responsibility for advisory opinions addressing Medicare coverage and payment rules or whether business arrangements complied with those rules, and she did not monitor or supervise the monitoring of Corporate Integrity Agreements. *Id*. ¶ 5.

From March 10, 1997 to May 3, 2003, Ms. Robinson was Associate Counsel in the Industry Guidance Branch. *Id*. ¶ 6. Her responsibilities included drafting advisory opinions like those described above. *Id*. As Associate Counsel, she had no responsibility for advisory opinions addressing Medicare coverage and payment rules or whether business arrangements complied with those rules, and she did not monitor Corporate Integrity Agreements. *Id*. ¶ 7.

Ms. Robinson has no personal knowledge about the facts at issue in this litigation. *Id*. ¶ 9. She has no recollection of having worked or supervised any matter involving the Defendants during her employment with OIG. *Id*. ¶ 8. She has no responsibility for CMS guidance or authorities regarding Evaluation and Management services, such as those at issue in this case. *Id*. ¶¶ 11-12.

Ms. Robinson has no personal knowledge of any guidance provided by CMS to Defendants or of any communications between Defendants and any current or former CMS employees. *Id*. ¶ 14. She has no recollection of former government employees Cindy Graunke or Lois Steinfort or

6

any guidance they may have provided. *Id.* ¶ 15. She has no personal knowledge of the DAB's Medicare Operations Division or Medicare Appeals Council. *Id.* ¶ 16. She has never worked for the DAB or an ALJ. *Id.* She has not participated in litigation before an ALJ. *Id.* Finally, she has no personal knowledge of any qui tam action involving Defendants or of any OIG site visit involving Defendants. *Id.* ¶¶ 17-18.

## LEGAL STANDARD

Rule 26(a) of the Federal Rules of Civil Procedure permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." District courts are empowered to limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). "District courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

When a party seeks to depose high-ranking officials or executives within an organization or government entity, many courts have applied Rule 26 to preclude those depositions when the officials lack unique, personal knowledge that is relevant to the case. Under this reasoning, sometimes referred to as the "apex doctrine," "[h]igh-ranking government officials are generally shielded from depositions because they have 'greater duties and time constraints than other witnesses.'" *Lederman v. New York City Dept. of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (precluding deposition of mayor and former deputy mayor) (quoting *In re United States*

*(Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993)). "If courts did not limit these depositions, such officials would spend 'an inordinate amount of time tending to pending litigation.'" *Id*. (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)). Put simply, the "apex doctrine seeks to prevent a high-ranking corporate executive from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts; in other words, to protect apex employees 'from annoyance, embarrassment, oppression, or undue burden or expense.'" *Murillo v. Kohl's Corp.*, 2016 WL 6090862 (E.D. Wis. Oct. 18, 2016) (quoting *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14-cv-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016)).

This Court has adopted the reasoning of the apex doctrine and recognized that, "after considering the totality of the circumstances, district courts may preclude the depositions of high-ranking executives if the witness does not possess unique or specialized knowledge relevant to the litigation." *In re Yasmin & Yaz (Drospirenone) Marketing Sales Practices & Relevant Products Liability Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 WL 3759699, at *2 (S.D. Ill. Aug. 18, 2011) (citing *Patterson*, 281 F. at 681-82). In *In re Yasmin*, this Court refused to compel the depositions of the defendants' executives citing "the absence of any indication that these executives possess information that is more than marginally relevant to this litigation, as well as the information's duplicative nature and availability through other deponents[.]" *Id*. at *6.

*In re Yasmin* followed the Seventh Circuit's ruling in *Patterson*, in which the Seventh Circuit upheld the decision precluding the plaintiff from deposing defendant's corporate vice president because the deponent was a high-ranking officer, the plaintiff had deposed two supervisors and the human resources director of the company, and the plaintiff failed to submit interrogatories as an inexpensive, convenient, less-burdensome method of discovery. 281 F.3d at

8

681. As in this case, the Seventh Circuit held the failure to utilize this less burdensome method of discovery "cast[] serious doubt over her claim that [the deponent] possessed information that was more than marginally relevant to [the] civil action." *Id*. at 682. Numerous other courts have reached the same result. *See*, *e.g.*, *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 482-84 (10th Cir. 1995) (entering protective order precluding deposition of Board Chairperson who had no personal knowledge of the matter); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (precluding deposition of defendant's chief executive officer who lacked knowledge of any pertinent facts); *Murillo*, 2016 WL 6090862 at *3 (denying executive's deposition because it would be unduly burdensome and disproportionate to the needs of the case given her lack of personal knowledge, lack of evidence tending to suggest she was responsible for, involved in, or directed a set of policies at issue; the opportunities to depose other witnesses with relevant knowledge; and other discovery in the case); *Berning v. UAW Local 2209*, 242 F.R.D. 510 (N.D. Ind. 2007) (entering protective order precluding deposition of union president).

### CHIEF ADMINISTRATIVE LAW JUDGE MCARTHUR ALLEN

Defendants' Motion seeking to depose Judge Allen does not allege that Judge Allen possesses any personal knowledge related to the Defendants, the allegations in this case, or any ALJ decision involving Defendants. (Doc. 96). Instead, Defendants set forth a vague description of two generic topics they suggest Judge Allen could testify to: (1) "an overview of the various decisions and the ALJ process;" and (2) the ALJ backlog. (*Id*. ¶ 11). They further state he is not a high-level official, claim the exaggerated alternative is deposing every ALJ in OMHA, and fail to mention the United States offered to provide a 30(b)(6) witness to testify on the ALJ appeal process. (*Id*.)

As described above, Judge Allen sits at the apex of OMHA and reports directly to the Secretary of HHS. He oversees the second largest corps of ALJs in the country located in ALJ field offices nationwide. Defendants declare he is the "best" witness to testify on the ALJ process, but Defendants are not entitled to choose who the United States selects as an organizational witness on ALJ procedures. Defendants' deposition of Judge Allen, a high-level official, would be unduly burdensome, disruptive, and inconvenient to the United States.

In addition to objecting that the Chief ALJ should not be deposed on the ALJ appeal process when he has no unique personal knowledge, the United States objects that the details of the ALJ backlog – such as why it occurred and what OMHA did to alleviate the backlog – are irrelevant to whether Defendants knowingly submitted false claims and are not likely to make a fact of consequence more probable or less probable. Defendant asserts that "[t]he 'backlog' is an important issue" because Defendants allegedly had a lower success rate on appeal after the partial resolution of the backlog, but this speculative argument assumes the backlog somehow impacted the proper resolution of Defendants' appeals. Whether Defendants' ALJ appeals were correctly decided is not at issue here, and Defendants should not be permitted to re-litigate or attack unfavorable ALJ decisions through this case. Furthermore, even if the backlog were marginally relevant – which the United States denies - the United States does not dispute there was a backlog of ALJ cases, and information about the ALJ backlog and its resolution is publicly available.[12] Similarly, the United States does not dispute that some of Defendants' appeals were impacted by the backlog – just like many other medical providers, but this does not entitle them to discovery on the reasons for the backlog. Internal HHS information related to the backlog has no bearing on the issues to be decided, specifically, whether Defendants knew they were submitting false claims.

---

[12] *See, e.g.*, *Medicare Appeals Backlog Primer*, https://www.hhs.gov/sites/default/files/dab/medicare-appeals-backlog.pdf.

Finally, the United States objects to Defendants seeking testimony from Judge Allen – or any ALJ – on an "overview" of unidentified ALJ decisions. Defendants fail to describe exactly what information they are seeking under this topic, but the Motion references possible testimony regarding alleged inconsistencies in prior ALJ decisions. Defendants do not assert that Judge Allen has any knowledge of any ALJ matters involving Defendants, and ALJ decisions are legal documents that speak for themselves. The reasoning behind an ALJ's decision is contained in the four corners of the document, and testimony by a different ALJ about that reasoning would be highly speculative and not relevant to the issues in this case, such as Defendants' knowledge of those decisions.

In sum, Defendants do not claim Judge Allen has any personal, unique knowledge that is relevant to this action, and much of the proposed testimony is neither relevant nor proportional to the needs of this case. Requiring the most senior ALJ to be deposed simply because he has general knowledge of the ALJ appeals process would be burdensome and inconvenient to the United States, especially when other less burdensome discovery methods have not been utilized. This is exactly the type of deposition the apex doctrine is intended to prevent – a high ranking government official who could frequently be subject to depositions in numerous cases solely because of his position. If Defendants are seeking a witness to testify about general procedures and process for ALJ appeals, the United States continues to offer a 30(b)(6) witness on that topic.

## MS. VICKI ROBINSON

Defendants' Motion seeking to depose Ms. Robinson asserts she is not a high-ranking government official and vaguely describes her as having "direct knowledge" of unidentified "government policies from the viewpoint of OIG[.]" (Doc. 96 ¶ 22). These unsupported arguments are incorrect. Ms. Robinson is the Senior Counselor for Policy for the HHS OIG, and she reports

11

directly to the IG, who is one level under the Office of Secretary of HHS. Ex. 1 ¶¶ 1-2; HHS-OIG Org. Chart above. As stated in Ms. Robinson's declaration, she does not have any personal knowledge of the relevant issues in this case. Ex. 1. Ms. Robinson's responsibilities include high-level strategic planning for the entire OIG, helping set OIG-wide strategic goals, advising the OIG on policy issues, and reviewing OIG products. *Id.* ¶ 1. Ms. Robinson does not work on individual case matters, such as FCA cases or Corporate Integrity Agreements. *Id.* ¶ 3.

In her prior role as Chief of the Industry Guidance Branch in the Office of Counsel to the Inspector General (OCIG), Ms. Robinson worked with the Anti-Kickback Statute and the Civil Monetary Penalties Law. *Id.* ¶ 4. The Antikickback Statute and Civil Monetary Penalties Law are not at issue in this case. Ms. Robinson had no responsibility for advisory opinions addressing Medicare coverage and payment rules or whether business arrangements complied with those rules. *Id.* ¶ 5. She did not monitor or supervise the monitoring of Corporate Integrity Agreements. *Id.* ¶¶ 3, 5.

Ms. Robinson has no personal knowledge of Defendants, Defendants' conduct, or the particular facts in this litigation. *Id.* ¶ 8. She has no responsibility for CMS guidance regarding the medical necessity of visits to nursing home and assisted living facility residents or the coding requirements for such visits. *Id.* ¶ 11. She has no responsibility for CMS guidance or authorities regarding the evaluation and management services at issue here, and she has no responsibility related to Local Coverage Determinations issued by Medicare contractors. *Id.* ¶¶ 12-13. She also has no personal knowledge of any guidance provided by CMS to Defendants or any communications between Defendants and any current or former CMS employees. *Id.* ¶14.

Defendants next claim Ms. Robinson can testify about Defendants' purported "reliance on ALJ decisions, the prior qui tam and the OIG site visit" from "the OIG viewpoint." (Doc. 96 ¶ 22).

Through these topics, Defendants are essentially seeking to elicit impermissible and speculative opinion testimony from Ms. Robinson regarding whether Defendants reasonably relied on these various actions. Ms. Robinson cannot offer opinions on the reasonableness of Defendants' conduct in this matter and has not been disclosed as an expert witness. Defendants' attempt to obtain such testimony should be denied.

Finally, to the extent Defendants are seeking testimony regarding the government regulations, guidance, and policies applicable to the claims at issue in this case, the United States has already produced two 30(b)(6) witnesses who testified on the Medicare authorities that govern coverage and coding of Defendants' claims. The United States has identified five 30(b)(6) witnesses to testify on the specific education, guidance, and warnings provided to Defendants from Medicare contractors. Another deposition on these topics is cumulative and duplicative, especially when less burdensome discovery methods have not been utilized. Because Ms. Robinson is a high-ranking HHS attorney with no knowledge of the proposed deposition topics, to allow her deposition would be burdensome, inconvenient, disruptive, and not proportional to the needs of the case. Like Judge Allen, Ms. Robinson's deposition falls squarely within the protection of the apex doctrine because she could be subject to deposition in many fraud cases where she lacks personal knowledge of the relevant facts.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court deny Defendants' Motion seeking to require the depositions of Judge Allen and Ms. Robinson.

Respectfully submitted,

RACHELLE AUD CROWE
United States Attorney

*/s/ Laura J. Barke*
NATHAN E. WYATT
LAURA J. BARKE
Assistant U.S. Attorney
Nine Executive Drive
Fairview Heights, IL 62208-1344
Phone: (618) 628-3700
nathan.wyatt@usdoj.gov
laura.barke@usdoj.gov

*Attorneys for the United States of America*