IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-651-SMY-RJD |
| | ) | |
| GENERAL MEDICINE, P.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' "Motion Re Medical Records Discovery" (Doc. 117) that was referred to the undersigned by District Judge Yandle, pursuant to the Federal Magistrate Act (as amended), 28 U.S.C. §636(b)(1)(A). Doc. 118. The Government responded. Doc. 119. As explained further, Defendants' Motion is DENIED.

Defendant Thomas M. Prose is the sole shareholder and officer of Defendant General Medicine, P.C., an entity that employs physicians and nurse practitioners who provide care to patients at long-term care and rehabilitation facilities. Doc. 74, p. 3. The remaining 17 Defendants are all entities that are/were owned and operated by Dr. Prose and are/were affiliated with General Medicine, P.C. Doc. 1, p. 5-9.[1] The Government alleges that Defendants violated the False Claims Act, 31 U.S.C. §3729(b) and also pursues claims against Defendants under state law for unjust enrichment, common law fraud, payment by mistake, and others. The Government

---

[1] The Government contends that the remaining 17 Defendants were shell entities for General Medicine, P.C. Doc. 86, p. 10.

alleges that Defendants billed for patient visits which were not medically necessary or reasonable or were upcoded (the services provided did not meet the requirements for the billing code submitted to Medicare).    Doc. 86, pp. 70-103.

The Government filed this suit on March 30, 2022.  Doc. 1.  Approximately six weeks later, the Government filed a Motion for Leave to Issue Limited Early Discovery, seeking to subpoena records from nursing homes and assisted living facilities where Defendants treated Medicare beneficiaries in order to compile a statistically valid random sample ("SVRS").    Doc. 10, p. 3.  District Judge Yandle granted the motion.  Doc. 19.

The Government explains that after Judge Yandle granted the Motion to Issue Limited Early Discovery, it spent the next ten months collecting records from the nursing homes and assisted living facilities.  Doc. 119, pp. 1-2.  For every patient encounter or exam at issue, the subpoenas requested that patient's medical records from the one-month period prior to the encounter or exam with Defendants.  *Id*., p. 1.  In response, the Government received paper and electronic files and also followed-up with the facilities to determine whether they possessed additional records that were responsive to the subpoenas, eventually receiving approximately 95,000 pages of medical records.  *Id*., p. 2.  The Government produced these records to Defendants as it received them.  *Id*.

In May 2024, the Government disclosed an expert report by Dr. Charles Crecelius, a physician who specializes in geriatric medicine.   Dr. Crecelius reviewed the records of 133 patient files from the SVRS and found that 117 of those files contained sufficient records for him to offer an opinion as to whether Defendants' billed services were medically necessary and met billing code requirements.    He opined that some of the visits were not medically necessary and did not meet billing code requirements.   At the request of Defendants' counsel, the Government produced

the medical records to Defendants that it had already produced, but in a format organized by patient.

In their "Motion Re: Medical Records Discovery," Defendants ask the Court to "enter an Order requiring [the Government] to obtain the complete medical records for each claim reviewed by Dr. Crecelius and for each example of a false claim in the Second Amended Complaint)." To be clear, Defendants ask the Court to Order the Government to produce medical records it never had and also may not exist. Defendants cite no legal authority for their position, but contend that neither Dr. Crecelius nor their own expert can determine "medical necessity or coding level" because they do not have the complete medical records to review. To the extent that Defendants believe Dr. Crecelius' reasoning is flawed, there are multiple avenues to make that argument: as part of a *Daubert* motion, and/or argument to the jury regarding the weight and credibility of his testimony.

The Government explains that it was Defendants' duty to retain documentation that supports the medical necessity of their claims for seven years from the date of service. 42 C.F.R. §424.516(f)(1). More than seven years has passed for some of the visits in question, but considering this case was filed prior to the passage of seven years, the Court presumes Defendants have not disposed of records that would support their defense. The Government also points to deposition testimony given in this case that indicates Medicare does not need or require a patient's entire set of medical records to determine whether a claim was medically necessary or correctly coded. Instead, Medicare reviews the records maintained and submitted by the medical provider to determine whether the care provided was medically necessary and correctly coded. Consequently, the record before the undersigned reflects that to the extent Defendants' own expert does not have sufficient documentation to support their billing practices, that is the fault of

Defendants.

Regardless, Defendants provide no legal authority to support their motion, which is DENIED.

**IT IS SO ORDERED.**

**DATED:** January 30, 2025

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**