IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cv-651-SMY |
| | ) |
| GENERAL MEDICINE, P.C., et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

The United States of America brings this action under the False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA"), and common law theories of fraud, payment by mistake, and unjust enrichment against General Medicine, P.C.; General Medicine of Illinois Physicians, P.C.; General Medicine of North Carolina, P.C.; Advanced Medical Haggerty Partners, P.A.; Borough Medical Partners, P.A.; Centro Medical Partners, P.A; City Medical Partners, P.A.; Integrated Medical Partners, P.A.; Metro Medical Haggerty Partners, P.A.; Metropolis Medical Partners, P.A.; National Medical Partners, P.A.; New Castle Haggerty Medical Partners, P.A.; Regional Medical Partners, P.A.; Sigma Haggerty Medical, P.A.; Silverton Medical Partners, P.A.; Statewide Medical Partners, P.A.; Vicinity Medical Partners, P.A.; Westco Haggerty Medical Partners, P.A.; and Thomas M. Prose (collectively, "GM"). The Government alleges GM engaged in a wide-ranging health care fraud involving billing Medicare for thousands of false claims to the Medicare Program for visits with residents of nursing and assisted living facilities in multiple states.

Now before the Court are GM's motion to exclude (Doc. 148) and the Government's motions to exclude (Docs. 149, 150, and 151). The motions are fully briefed (Docs. 165, 166, 167,

and 169). For the following reasons, GM's motion is **DENIED** and the Government's motions are **GRANTED.**

## Legal Standard

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. District courts have a "gatekeeping" obligation to ensure that expert testimony is both relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (2003); *Lees v. Carthage College,* 714 F.3d 516, 521 (7th Cir. 2013). Essentially, the Court must answer three questions before admitting expert testimony: (1) is the expert qualified; (2) is the expert's methodology reliable; and (3) will the expert's testimony assist the trier of fact in understanding the evidence or determining a fact in issue. *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The party offering the expert testimony bears the burden of proof as to relevance and reliability. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) (citing *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009)).

"A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."" *Id.* (quoting *Daubert*, 509 U.S. at 596).

**Discussion**

*GM's Motion to Exclude Michael Petron (Doc. 148)*

The Government retained Michael Petron, CPA, CFE to provide opinion testimony relating to the issue of damages. Petron is a certified public accountant and a certified fraud examiner. He developed and implemented a random sample to estimate the amount of overpayment associated with evaluation and management visits at nursing homes and assisted living facilities that were allegedly not performed, not medically necessary, or lacked the proper documentation to satisfy the requirements for the services performed.

Petron details his methodology and findings in his report. He used Medicare claims data provided by the Government reflecting Medicare claims submitted by GM January 1, 2015 through March 31, 2021. To arrive at a population of medical encounters from which to create his sample, Petron limited the claims data by: (1) Procedures for [Medicare] CPT [billing] codes 99309, 99310, and 99337 where the associated paid amount was greater than zero; (2) Dates of service from April 1, 2016, to March 31, 2021; (3) removing Encounters where any of the three CPT codes 99309, 99310 or 99337 appeared more than once for a beneficiary and date of service combination; and (4) removing Encounters were total paid was less than $50. These limitations resulted in a sample frame population of 347,486 encounters with a total amount paid by Medicare of $30,216,594. Petron then divided the encounters from this sample frame into three subgroups, or strata, based on each of the three relevant CPT codes. Petron notes this stratified random sampling "is a well-researched and established sample design methodology."

Petron used a software program, Rat-Stats, to extrapolate an overpayment estimate from the sample. Rat-Stats was developed by the Office of Inspector General at the Department of Health and Human Services, ("HHS-OIG"), and Petron commonly uses the program to assist in

sample size calculations, sample selections, and estimation.  Utilizing Rat-Stats, Petron performed two extrapolations to the sample frame encounter population that showed Medicare overpayment estimates.

GM does not argue that Petron is unqualified or that his methodology is not sound.  Petron has the requisite background and experience to render his statistical opinions and applied well-known methodology to his sampling and extrapolation findings.  His report includes a detailed methodology section in which he outlines and explains his statistical analysis and conclusions.

GM contends, however, that the Government does not have sufficient proof the claims presented are false claims, and therefore any extrapolation analysis is invalid.  GM does not raise a true *Daubert* challenge.  Rather, it challenges the sufficiency of the Government's evidence to prove the claims asserted in this case.  Petron, as a damages expert, provides an opinion as to an overpayment of money by Medicare.  Whether the overpayment is an overpayment of false claims under the FCA is question for the jury.  The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology – the framework – of the expert's analysis." *See Manpower, Inc. v. Insurance Co. of Pennsylvania,* 732 F.3d 796, 808 (7th Cir. 2013).

GM's disagreements with Petron's ultimate conclusions are not a justifiable basis to exclude his opinions.  Its arguments go to the weight of Petron's testimony, not to its admissibility. *See Daubert*, 509 U.S. at 596. The "key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at [his] opinion; the inquiry must focus ... solely on principles and methodology, not on the conclusions they generate." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*,

509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* GM may certainly attempt to discredit Petron on cross-examination or in their own presentation of the evidence. Therefore, GM's motion is **DENIED**.

### *Government's Motion to Exclude Jonathan Evans, M.D. (Doc. 149)*

GM retained Jonathan Evans, M.D., M.P.H. to rebut the opinions offered by Government experts Charles Crecelius, M.D. and Richard Baer, M.D. Dr. Evans is board certified in Internal, Geriatric, and Hospitive and Palliative Medicine. He has worked with senior health care services organizations, focusing on the quality of care for elderly patients in skilled nursing facilities for several decades. Dr. Evans reviewed the reports of Dr. Crecelius and Dr. Baer, medical records, and relevant case material. He provided opinions on whether various types of services performed by GM and specific patient visits billed by GM were medically necessary.

The Government moves to exclude Dr. Evans pursuant to Rule 37(c) because of his failure to disclose a complete list of cases in which he has testified in the last four years. Specifically, in Dr. Evan's report disclosed on March 27, 2025, he stated to the best of his knowledge that he was not involved in any depositions over the past four years. Dr. Evans listed trial testimony and an ALJ hearing. Dr. Evans further noted that "there are a few others prior to these but the information was lost when my former computer broke down."

During his deposition on May 19, 2025, Dr. Evans admitted that he had been deposed multiple times in the last four years. When asked why this information was not disclosed in the report, he explained he had technical issues after exceeding his computer's storage capacity, he was unable to recover the other cases in which he had been deposed, and he did not keep a running

list.  Dr. Evans indicated he could attempt to obtain technical assistance to recover the materials on his computer and could contact most of the attorneys he had worked with.  Dr. Evans advised that if there were any other cases, they would have been malpractice cases involving nursing homes.  He further testified that he has never previously worked as an expert on a case involving health care fraud nor has he testified in a case involving the False Claims Act.

The Government requested Dr. Evans to provide the complete list of cases in which he had been deposed pursuant to Federal Rule of Civil Procedure 26(a), and he agreed to do so.  The Government now moves to exclude Dr. Evans testimony because, to date, the Government has not received any additional disclosures from GM regarding the other matters for which Dr. Evans has testified in within the last four years.

Rule 26 requires an expert witness to prepare a written report. Fed.R.Civ.P. 26(a)(2)(B). Among other things, the written report must contain a list of all cases in which the witness has testified as an expert, at trial or by deposition, during the previous four years. Fed.R.Civ.P. 26(a)(2)(B)(v).  Rule 26(e)(2) imposes on parties a "duty to supplement" their initial disclosures. Fed.R.Civ.P. 26(e). If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) the court may impose appropriate sanctions. Fed.R.Civ.P. 37(c)(1).  Pursuant to Rule 37(c)(1):

> If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure, and

>   (C)  may impose other appropriate sanctions, including any of the orders listed in
>        Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37. Here, because GM has failed to supplement its disclosures to provide the required information, it must demonstrate that the failure was substantially justified or that it was harmless. *David v. Caterpillar,* 324 F.3d 851, 857 (7th Cir. 2003).

GM asserts there was no intent to withhold information from the Government. And in an apparent attempt to justify its failure to disclose the required information, GM notes the Government did not communicate with GM's counsel to resolve the issue prior to Dr. Evans's deposition and did not file a motion to compel.

First, it is unclear why the Government's counsel would attempt to resolve the matter prior to Dr. Evans' deposition when his testimony is what alerted Counsel that certain information had not been disclosed. Moreover, GM's attempt to shift the blame to the Government is unavailing. GM had an affirmative duty to comply fully with Rule 26's disclosure requirements. And despite becoming aware that Dr. Evans's disclosures were not complete at least by May 2025, to date, GM has not supplemented them. The Court finds its failure to do so unjustifiable.

GM also asserts the Government has not been harmed by the failure of Dr. Evans to disclose his previous testimony and depositions as required. The intent behind Rule 26 is to allow parties to prepare for trial and to avoid unnecessary surprises throughout the preparation. Adequate access to other cases in which an expert has testified allows the opposing party to obtain prior testimony and potentially identify inconsistent positions taken in previous cases for use in cross-examination. *See Hess v. White Castle Sys. Inc.*, No. 19-CV-274-RJD, 2020 WL 1529533, at *2 (S.D. Ill. Mar. 31, 2020) (excluding expert for failing to provide a list of cases); *Wallace v. Hounshel*, No. 1:06-cv-01560-RLY-TAB, 2008 WL 2184907, *3 (S.D. Ind. May 22, 2008) (same). The failure to disclose information regarding those cases and the expert's prior testimony clearly

prejudices the opposing party's opportunity to conduct relevant additional discovery and prepare for trial.

The Court recognizes that exclusion is an extreme and harsh remedy, and there is a general preference to determine a case on the merits. *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 759 (7th Cir. 2004). And the Seventh Circuit has warned that an imposition of sanctions "must be proportionate to the circumstances surrounding the failure to comply with discovery." *Langley v. Union Elec. Co.,* 107 F.3d 510, 515 (7th Cir. 1997) (quoting *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993)). That said, in this case, discovery closed long ago, and dispositive motions have been filed. Under these circumstances, exclusion of Dr. Evans as an expert witness is warranted and the appropriate remedy. Accordingly, the Government's motion to exclude Dr. Evans is **GRANTED**.

### *Government's Motion to Partially Exclude Richelle Marting (Doc. 150)*

GM retained Richelle Marting, J.D. to review the Government's expert Dr. Crecelius's opinions and formulate an opinion as to whether the medical record documentation produced in discovery was sufficient to arrive at a determination of whether services are reasonable and necessary. Marting is a healthcare attorney and a certified professional coder. She holds a Bachelor of Science degree in Health Information Management and a master's degree in health services administration.

Marting authored a preliminary report containing opinions regarding medical necessity, physicians' services in long-term care, and the completeness of medical record and a report containing opinions on the coding of GM's claims billed to Medicare. The Government moves to limit Marting's testimony to bar her from offering opinions reflected in her preliminary report regarding: (1) interpretations of the term "medical necessity;" (2) how to review medical records

to determine if a service was medically necessary, including the documents necessary to do so, and her critiques of Dr. Crecelius's medical necessity review; (3) whether the records reviewed by Dr. Crecelius were "complete;" and (4) her overview of physicians' services in long-term care.

GM does not object to the exclusion of Marting's preliminary report. Accordingly, the Government's motion is **GRANTED** and Marting will be prohibited from testifying to the opinions expressed in her preliminary report.

### *Government's Motion to Partially Exclude Bo Martin (Doc. 151)*

Bo Martin, Ph.D. is a statistician specializing in the health care industry. His expertise includes statistically valid methods for random sampling and extrapolation. Martin was retained to review the Petron report to (1) evaluate Petron's statistical methods for sampling from a population of claims and the relying on the findings from that sample as inputs to estimate a total amount for the population and (2) to assess whether Petron considers the findings of claims having overpayments in the sample to be false claims.

The Government moves to exclude Martin's second opinion: "My second opinion is that, in my reading of the Petron Report, I see no indication that he has an opinion that the sampled claims found to have overpayments are false claims. Moreover, I find no indication that other experts for the Government have determined any claims to be false or fraudulent." In reaching this opinion, Martin searched for the term "false" in the PDFs of Dr. Baer and Dr. Crecelius's expert reports. In his deposition, Martin acknowledged that a person does not need experience or training as a statistician to search a PDF document for the term "false."

An expert must testify to something more than what is obvious to the layperson to be of any assistance to the jury. *See United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019). Martin's opinion that the Government's experts did not determine any of GM's claims to be "false

claims" is not an opinion that assists the jury. He concedes someone can simply read the reports to determine whether the documents contain the word "false." And by their own testimony, the Government's experts acknowledge they are not opining as to whether GM violated the False Claims Act. Rather, Dr. Crecelius was retained to provide opinions as to the medical necessity of GM's practices and patient visits. While Dr. Baer was retained as an expert on Medicare coverage and policy. Accordingly, the Government's motion is **GRANTED**. The Court excludes Martin's second opinion.

    **IT IS SO ORDERED.**

    **DATED: February 11, 2026**

**STACI M. YANDLE**
**Chief United States District Judge**